# UNITED STATES ex rel. CHICAGO BUSINESS COLLEGE

*v.*

# PAYNE.

---

UNITED STATES MAILS; SECOND-CLASS MAIL MATTER; INSTITUTIONS OF LEARNING.

1. The Postmaster-General properly excludes from the mails as second-class mail matter a weekly publication issued as an advertising medium by an incorporated business college conducted exclusively for private gain, the same not being a "regularly incorporated institution of learning" within the meaning of the act of Congress of July 16, 1894, providing that periodical publications issued by

such institutions shall be admitted to the mails as second-class matter if they conform to certain prescribed requirements.

2. " Institutions of learning " within the meaning of that act are those organizations of a permanent nature wherein instruction is given in the higher branches of education only, and which owe their origin to private or public munificence, and are established solely for the public good and not for private gain.

No. 1240. Submitted November 7, 1902. Decided December 3, 1902.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia, dismissing a petition for the writ of *mandamus* to compel the Postmaster-General to admit a certain periodical publication to the mails as second-class mail matter.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

In this case, as in the two just preceding, the question is that of the right of the relator to have a periodical publication issued by it practically as an advertisement of its business received and transmitted in the mail as second-class mail matter. The circumstances, however, and the conditions here are very different from those of the preceding cases, and the statute law bearing on the case is somewhat different.

By an act passed on July 16, 1894, Congress enacted,

" That from and after the passage of this act all periodical publications issued from a known place of publication at stated intervals and as frequently as four times a year by or under the auspices of a benevolent or fraternal society or order organized under the lodge system and having a *bona fide* membership of not less than one thousand persons, or by a regularly incorporated institution of learning, or by or under the auspices of a trades union, and all publications of strictly professional, literary, historical, or scientific societies, including the bulletins issued by State boards of health, shall be admitted to the mails as second-class matter and the postage thereon shall be the same as on other second-

class. matter, and no more: *Provided, further,* That such matter shall be originated and published to further the objects and purposes of such society, order, trades union, or institution of learning, and shall be formed of printed paper sheets without board, cloth, leather, or other substantial binding, such as distinguish printed books for preservation from periodical publications " (28 Stat. 105).

The relator, the Chicago Business College, is an educational organization, incorporated under the general incorporation act of the State of Illinois by certificate of incorporation, and has its school in the city of Chicago. It is a joint-stock company, composed of three persons, with an authorized capital stock of ten thousand dollars, divided into one hundred shares of the par value of one hundred dollars each, of which one of the corporators holds fifty shares, another forty-nine shares, and the third one share; and its purpose is to conduct a " business college," where the various branches of an ordinary common-school education are taught. It publishes a weekly publication, designated by the name of " Business Education," which is an advertising medium for the relator's business, intended to attract students by setting forth the advantages of the relator's methods of instruction. Claiming to be a " regularly incorporated institution of learning," the relator seeks to have this publication transmitted through the mails as second-class mail matter under the acts of Congress of March 3, 1879, and July 16, 1894, by the latter of which it is claimed that such transmission is authorized.

About December 10, 1897, the relator made application to the Post-Office Department for the admission and transmission of the publication as second-class mail matter; and the application was allowed, and a certificate to that effect was. issued to the relator. This certificate was revoked and canceled on August 22, 1901. On December 6, 1901, the relator again made application to the Department for the admission of the publication into the mails as second-class matter; and on January 10, 1902, it received formal notice from the Department that after due consideration the application

had been refused, on the ground that the relator was not a regularly incorporated institution of learning within the meaning of the act of July 16, 1894.

Thereupon, on April 1, 1902, it instituted the present proceedings by filing its petition in the Supreme Court of the District of Columbia for a writ of *mandamus* to require the Postmaster-General to receive the publication in question as second-class mail matter. To the rule to show cause served on him, the Postmaster-General made return, in substance to the effect that the duty was imposed upon him by law to determine whether the relator's publication was such as was entitled to be received into the mails as second-class matter; that he had exercised his judgment and discretion in such determination; and that, in his opinion, the relator was not a regularly incorporated institution of learning in the sense of the act of Congress, and for that reason the publication had not been admitted into the mails as second-class matter. Hearing was had on the petition and answer and a stipulation of counsel as to some few facts, one of them being " that the relator is a corporation regularly incorporated as an institution of learning, under the laws of the State of Illinois "; and the court below, holding that the relator was not, in the contemplation of the law, a duly incorporated institution of learning, that the Postmaster-General was correct in his interpretation of the law to that effect, and that even if he were wrong the court would not undertake to supervise his decision, discharged the rule to show cause, denied the writ of *mandamus,* and dismissed the petition.

From the order of the court thereon rendered the relator has caused this appeal to be brought to this court.

*Mr. Harry P. Simonton, Mr. Robert Andrews,* and *Mr. William R. Andrews,* for the appellant:

1. For a good definition of the word " institution " and for an authority carrying out the theory that Congress meant by the words " a regularly incorporated institution of learn-

ing " institutions of a permanent character in contradistinction to a temporary enterprise, see *Indianapolis* v. *Sturdevant,* 24 Ind. 391–395; *Humphries* v. *Little Sisters of the Poor,* 27 Ohio St. 201.

2. The main branch of this case turns upon the interpretation of the words " a regularly incorporated institution of learning," and it is contended in behalf of appellant that these words, having a known definition and being plain in their meaning, no room is left for construction by the court, but the ordinary, literal meaning must prevail.    The construction placed upon the act of July 16, 1894, by the respondents and the learned judge of the Supreme Court of the District of Columbia is a forced one, ignoring the plain, general acceptation of the words used, and through such forced construction makes an exception to the positive terms of that general statute, contrary to the well-settled rules of law and the weight of authority.    *Shreve* v. *Cheesman,* 69 Fed. Rep. 785, 789; *Madden* v. *Lancaster County,* 65 Fed. Rep. 188, 195; *Bennett* v. *Worthington,* 24 Ark. 487, 494. The language in the act under consideration is plain and unambiguous, and consequently Congress must be presumed tò have intended what is literally expressed by the language used and no exception can be read into the act, not clearly expressed, and the construction placed upon the language by the learned judge of the court below cannot be permitted. *Maillard* v. *Lawrence,* 16 How. 251, 261; *Lake Co. Comrs.* v. *Rollins,* 130 U. S. 662, 665, 666, 667; *Knox Co.* v. *Morton,* 68 Fed. Rep. 787–789; *Shreve* v. *Cheesman,* 69 Fed. Rep. 785, 789; *St. Paul M. & M. Ry. Co.* v. *Sage,* 71 Fed. Rep. 40–47; *Barber Asphalt Co.* v. *City of Denver,* 72 Fed. Rep. 336–345; *McMaster* v. *N. Y. Life Ins. Co.,* 99 Fed. Rep. 856–868; *Arthur* v. *Taney,* 96 U. S. 108, 110; *Glover* v. *U. S.,* 164 U. S. 294–297; *Smythe* v. *Fiske,* 23 Wall. 374–382; *Madden* v. *Lancaster Co.,* 65 Fed. Rep. 188–195.

3. It is not claimed by respondents that any change has occurred in the incorporation of appellant or in the character of its publication, or that any features of the same differ

in any regard since the granting of the first certificate of entry on December 10, 1897. Upon that day the department construed the act of July 16, 1894, as including within its terms the publication of appellant, and on August 22, 1897, by a subsequent construction of the act (the construction contended for by appellees here), the department has by forced construction reversed its prior contemporaneous construction and has arbitrarily and without reason and in violation of the law, denied to appellant the privilege granted by the act and has excluded its publication as second-class mail matter. This was wrong. *U. S.* v. *Alabama, G. S. RR. Co.,* 142 U. S. 615, 621; *U. S.* v. *Railway Co.,* 37 Fed. Rep. 551–556. The meaning of the language of the act being plain and unambiguous, the prior contemporaneous construction of the same by the Post-Office Department will have weight with this court in arriving at the intent of Congress. *Edwards' Lessee* v. *Darby,* 12 Wheat. 206, 210; *U. S.* v. *State Bank of North Carolina,* 6 Pet. 29, 39; *Peabody* v. *Stark,* 16 Wall. 240, 243; *U. S.* v. *Moore,* 95 U. S. 760, 763; *U. S.* v. *Pugh,* 99 U. S. 265, 269; *Brown* v. *U. S.,* 113 U. S. 568, 571; *U. S.* v. *Hill,* 120 U. S. 169, 180; *Robertson* v. *Downing,* 127 U. S. 607, 613; *U. S.* v. *Philbrick,* 120 U. S. 52, 59; *Germania Iron Co.* v. *James,* 89 Fed. Rep. 811, 817; *St. Paul M. & M. Ry.* v. *Phelps,* 137 U. S. 528, 533.

4. The respondents should be estopped from asserting that the prior construction of the act of Congress of July 16, 1894, admitting the publication of appellant, was erroneous. Having once entered the publication as second-class mail matter, and permitted appellant to " invest its money " and " build property rights upon the faith of their action." *State of Indiana* v. *Milk,* 11 Fed. Rep. 389–397, and cases cited; *Cahn* v. *Barnes,* 5 Fed. Rep. 326–334; *Hough* v. *Buchanan,* 27 Fed. Rep. 328; *Pengra* v. *Munz,* 29 Fed. Rep. 830–836; *Rogers L. M. W.* v. *Am. E. Co.,* 164 U. S. 559; *Michigan L. & L. Co.* v. *Rust,* 168 U. S. 589; *U. S.* v. *McLaughlin,* 30 Fed. Rep. 147–162; *Clark* v. *U. S.,* 95 U. S. 539, 544; *Branson* v. *Wirth,* 17 Wall. 32, 42; *U. S.* v. *M., K. & T. Ry. Co.,* 37 Fed. Rep. 68, 71. The ruling of the Post-Office

Department, admitting the publication of appellant for nearly four (4) years, had become of necessity a kind of " common law," and should not be lightly set aside. *U. S.* v. *McDaniel,* 7 Pet. 1, 15.

5. The certificate was issued and revoked, and its reissue, a purely ministerial act, is sought to be compelled by the writ of *mandamus.* No claim has been made or will be made by appellees that the character of the organization of appellant or its publication has changed since the issuance of the certificate of entry in 1897 ; in fact, it is admitted that appellant " is a corporation, regularly incorporated as an institution of learning under the laws of the State of Illinois," and it is competent for this court to inquire into the reasons why appellees refuse to perform their ministerial duty and issue the certificate of entry, and if it is found that their refusal is an exercise of arbitrary power or that the reasons assigned are capricious, without foundation in law or contrary to law, the court may then, by the writ of *mandamus,* compel such performance. *U. S. ex rel. West* v. *Hitchcock,* 30 Wash. L. Rep. 186 (March 20, 1902) ; *Roberts* v. *U. S.,* 176 U. S. 221, 231. Courts do not countenance the exercise of arbitrary power by executive officers, and where contemporaneous construction of a statute is given by the executive department of Government and acted on for a number of years, courts will look with disfavor upon any sudden change whereby parties who have contracted with the Government upon the faith of such construction may be prejudiced. *U. S.* v. *Alabama,* 142 U. S. 615, 621.

6. The court below had the power to issue the writ of *mandamus* as prayed. *Marbury* v. *Madison,* 1 Cranch, 137, 164, 166, 171; *Kendall* v. *U. S.,* 12 Pet. 524, 610, 612; *Roberts* v. *U. S.,* 176 U. S. 221, 230, 231; *U. S. ex rel. West* v. *Hitchcock,* 30 Wash. L. Rep. 186 (March 20, 1902).

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, and *Mr. Henry H. Glassie,* Assistant, for the appellee:

Mr. Justice MORRIS delivered the opinion of the Court:

The same two questions are raised before us that were raised in the court below: 1. Whether the relator is a regularly incorporated institution of learning within the meaning of the act of Congress of July 16, 1894, and as such entitled to have its publication, which otherwise it is understood is not objectionable, transmitted through the mails as second-class mail matter; and 2. Whether if the Postmaster-General was in error in his construction of the law, the courts have any jurisdiction to review the discretion which he claims in the premises. But we are so clearly of opinion that the Postmaster-General was right in his construction of the act of Congress, and that the relator is not a regularly incorporated institution of learning within the sense and meaning of the law, that it is wholly unnecessary for us to consider the second question.

The expression *" institution of learning "* is somewhat uncertain in itself; for every establishment from the lowest school wherein the rudimentary elements of education alone are taught up to the highest and most advanced of universities, is an institution of learning; and yet we know very well that, in the ordinary use of language, we restrict the meaning to those organizations of a permanent nature wherein the higher branches of education only are those in which instruction is given. The lower education, when it is not given by the State, or through some public agency, or by some religious organization as a matter of benevolence, is usually left to individuals to be conducted as a business; while instruction in the higher branches of human knowledge is generally disseminated through those institutions of learning, popularly known as such, which owe their origin to private or public munificence and are established solely for the public good and not for private gain. That in this popular and ordinary sense the expression " institution of learning," used in the act of Congress of July 16, 1894, is to be understood, we think admits of no reasonable doubt. All the other organizations mentioned in the act to which the benefit of classification in

the category of second-class mail matter is extended, are of a charitable, fraternal, or benevolent character, and none of them is conducted for individual gain.

The relator's organization is conducted exclusively for individual gain. It may redound also to the public benefit. All education may be presumed to be for the public benefit and the good of the State; but so is the business of the baker and the grocery store and the farmer and the manufacturer; and we fail to see why the man who betakes himself to teaching as an occupation should be privileged over and above the baker and the farmer and the manufacturer, to send his periodical through the mails as second-class matter. We cannot think that Congress intended to give any such exclusive privilege; and it may be doubted whether it could validly have done so, if it did intend it.

The learned justice, who heard this cause in the court below, filed an opinion in which he very ably disposes of this question. In this opinion he calls attention to the definition given by the dictionaries of the word *"institution."* Webster, for example, says that an institution means " an established or organized society; an establishment, especially of a public character or affecting a community." And the Standard Dictionary says: " A corporate body or establishment instituted and organized for public use." Congress itself has not sought specifically to define the words; but we may properly refer to another act of that body which throws very great light on its meaning and intention.

In the general incorporation act passed by Congress for the District of Columbia (Secs. 519 to 676, R. S. D. C.) and the provisions of which are now incorporated into the code of the District as chapter XVIII thereof (act of March 3, 1901, sections 574 to 797, both inclusive), there is a classification of the organizations which might be incorporated thereunder, comprising twelve different and distinct classes. Some of these are for individual benefit; others are for public uses or charitable and benevolent purposes. The first in the enumeration is the class of " institutions of learning," so specifically designated; and as to them Congress says that the property to

be acquired by them shall be held " solely for the purposes
of education, and not for the individual benefit of the cor-
porators or of any contributor to the endowment thereof."
In the third class are grouped societies to be formed for
" benevolent, charitable, *educational,* literary, musical, scien-
tific, religious, or missionary purposes "; and it is implied
in one of the sections that, while organizations of this class
may not necessarily be for individual profit, yet that they
might also be joint-stock organizations for private gain and
individual advantage.   Thus Congress distinctly recognizes
the difference between " institutions of learning " and or-
dinary " educational " establishments, and regards the for-
mer as being solely of a public character for public uses and
purposes, while the latter may be organized for individual
gain.   It is true the statute is one enacted for the District
of Columbia alone; but the provision in it for " institutions
of learning " and for " educational societies " under separate
and distinct categories is evidently no more than a recogni-
tion of the distinction between the two classes prevalent every-
where throughout the United States.

It is unnecessary to inquire the meaning of Congress in
the use of the words " regularly incorporated."   On behalf
of the relator it is claimed that these words have some special
significance, that they mean " according to rule," and that
they serve to distinguish corporations so incorporated from
specially incorporated institutions on the one side, and from
irregular and unincorporated institutions on the other.   Ir-
regular and unincorporated institutions need not be consid-
ered; and were it necessary to distinguish between corpora-
tions organized by certificate under general law, which is
what the relator apparently claims, and corporations organ-
ized under special legislative enactment, we would unhesitat-
ingly hold that Congress meant precisely the reverse of that
for which the relator contends.   We do not deem it necessary
to determine the point; for, whether the incorporation of
the relator be general or special, according to rule, or other-
wise, no act of incorporation of any kind will avail it, if it is

not an " institution of learning " in the sense of the act of Congress.

We think that it is not an " institution of learning," such as Congress had in view. We think the court below rightly so held. We think the Postmaster-General was entirely correct. in his view of the law, and fully justified in his exclusion of the relator's publication from the privilege of second-class mail matter.

It is our conclusion that the order appealed from should be affirmed, with costs. And it is so ordered.

A writ of error to the Supreme Court of the United States was prayed and allowed.